**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SDNY PRO SE OFFICE
2015 SEP -2 A 11: 21

15 CV 6994

**J. D. Jordan. . . Pro Se**
**Plaintiff**

**Initial Private Right of Action Complaint under 16b of the Securities Act 1934**

**-v-**

**PERCEPTIVE ADVISORS LLC, PERCEPTIVE LIFE SCIENCES MASTER FUND LTD., BIOEDELMANN LLC, JOSPII EDELMAN and AEGERION PHARMACEUTICALS INC.,**

U.S. DISTRICT COURT
FILED
SEP 0 2 2015
S.D. OF N.Y.

**Defendants.**

**JURY TRIAL DEMANDED**

Plaintiff alleges, based upon knowledge with respect to the facts relating to him and upon information and belief with respect to all other allegations, as follows:

INTRODUCTION

1. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)"] ("Section 16(b)") in order to recover short-swing insider trading profits realized by defendants Perceptive Advisors LLC ("Advisors"), Perceptive Life Sciences Master Fund Ltd. (Master Fund"), BioEdelman LLC ("BioEdelman") and Joseph Edelman ("Edelman" and collectively, "Perceptive") while they were statutory insiders of Aegerion Pharmaceuticals, Inc. ("Aegerion" or the "Company").

2. The Perceptive formed a group pursuant Section 13(d)(3) of the Exchange Act, 15 U.S.C. §78m(d)(3), and SEC Rule 13d-5(b)(1), 17 C.F.R. §240.13d-5(b)(1), promulgated thereunder by the Securities and Exchange Commission ("SEC"). As a result, Perceptive at all relevant times beneficially owned 10% or more of the outstanding common stock of Aegerion making them statutory insiders of Aegerion within the meaning of Section 16(b).

3. As early as January 2013 defendant Perceptive reported on a Form 4 filed with the United States Securities and Exchange Commission (the "SEC") that it owned more than 10% of Aegerion's outstanding common stock "the "Common Stock"). Perceptive continued to own more than 10% of the Common Stock throughout the relevant time period thus, making them statutory insiders of the Company within the meaning of Section 16(b) and therefore subject to its strict liability provisions.

4. Section 16(b) requires company insiders to disgorge any profits earned through short-swing insider trading (i.e., purchases and sales, or sales and purchases, of the company's securities, within a six month period). Actual misuse of inside information is not an element of the claim although the state embodies a presumption that statutory insiders have access to such inside information.

PARTIES

5. Plaintiff J. D. Jordan is a shareholder of Aegerion.

6. Defendant Perceptive Advisors LLC maintains its principal offices at 499 Park Avenue, 25th Floor, New York, New York 10022. Edelman is the managing member of the Advisor which serves as the investment manager to the Master Fund and to a managed account for BioEdelman (an entity directly owned by Edelman).

7. Defendant Perceptive Life Sciences Master Fund Ltd. maintains its principal offices c/o Perceptive Advisors LLC, 499 Park Avenue, 25th Floor, New York, New York 10022.

8. Defendant BioEdelman LLC maintains its principal offices c/o Perceptive Advisors LLC, 499 Park Avenue, 25th Floor, New York, New York 10022.

9. Defendant Joseph Edelman maintains his principal offices c/o Perceptive Advisors LLC, 499 Park Avenue, 25th Floor, New York, New York 10022.

10. Aegerion Pharmaceuticals Inc.'s Common Stock trades on the NASDAQ under the symbol AEGR.

11. Aegerion is a necessary party as this action is brought by Plaintiff in order to obtain a recovery for the Firm.

## JURISDICTION AND VENUE

12. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. §78AA].

13. Venue is properly laid in this District because Defendants Edelman, Perceptive and BioEdelman are located in this District.

## SUBSTANTIVE ALLEGATIONS

14. In a Form 4 filed with the SEC on March 6, 2013, Edelman reported that on March 4, 2013 they had purchased 2,000 call option contracts on 200,000 shares of Aegerion common stock for $8.26 per contract (the "March 4, 2013 Calls"). The Form 4 reported that the Advisor purchased 1,000 contracts each for the benefit of the Master Fund and BioEdelman.

15. Each contract gave Edelman the right to purchase 100 shares of Aegerion common stock at a price of $25 per share until June 15, 2013.

16. In a Form 4 filed with the SEC on January 15, 2013, Edelman reported that on January 11, 2013 they had purchased 475,000 shares of Aegerion common stock for an average of $27.07 per share for the benefit of Perceptive Advisors, Edelman and the Master Fund.

17. In a Form 4 filed with the SEC on January 18, 2013, Edelman reported that on January 17, 2013 they had purchased 50,000 shares of Aegerion common stock for an average of $26.73 per share for the benefit of Perceptive Advisors, Edelman and the Master Fund.

18. In a Form 4 filed with the SEC on January 22, 2013, Edelman reported that on January 18, 2013 they had purchased 50,000 shares of Aegerion common stock for an average of $26.72 per share for the benefit of Perceptive Advisors, Edelman and the Master Fund.

19. In a Form 4 filed with the SEC on February 5, 2013, Edelman reported that on February 1, 2013 they had purchased 50,000 shares of Aegerion common stock for an average of $27.79 per share for the benefit of Perceptive Advisors, Edelman and the Master Fund.

20. A Form 4, within three days, was required to be filed upon the exercise of the 2000 call options to 200,000 shares of stock on June 16, 2013. This Form 4 was not filed on a timely basis as required and was not filed until the alleged sale of stock on September 5, 2013 and then filed to include the June 16th trade.

21. In a Form 4 filed with SEC on September 9, 2013, Edelman reported that on September 5, 2013 the Advisor sold 700,000 shares of Aegerion common stock on behalf of the Master Fund and 50,000 shares of Common Stock on Behalf of BioEdelman. All of the shares were reportedly sold a price of $89.20 per share.

22. The sales as reported occurred six months and one day after their purchase seemingly removing them from the recovery provisions of Section 16(b).

Believing the representations in the September Form 4 is the fact that according to NASDAQ, the exchange upon which Aegerion shares are traded, on September 5, 2013 only 501,500 shares of Aegerion common stock were traded. Furthermore, the lowest price of the day was reported as $90.94 – higher than the price Edelman's shares were reportedly sold.

23. Rather, the only two dates in which both the reported sale price and adequate trading volume occur is either July 30, or July 31, 2013. Therefore, upon information and belief, Edelman's sales occurred on either of those dates which are within six months of its purchases.

24. The March 4, 2013 Purchase occurred within six months of the July 2013 Disposition. These transactions were purchases or sales of securities for Section 16(b) purposes.

25. Under the "lowest price in, highest price out" method of calculating profit, Edelman realized millions of dollars of profits recoverable under Section 16(b), which are subject to disgorgement to the Firm.

## BASIS FOR INFORMATION AND BELIEF

26. Plaintiff's information and belief is based on, among other things, the SEC Form 4 as referenced herein.

## ALLEGATIONS AS TO DEMAND

27. Plaintiff notified Aegerion of the facts alleged above (the demand).

28. Aegerion responded by stating that Edelman's trades did indeed occur on September 5, 2013 as reported. However, the reason the trades are not reflected in the trading volume of the day is that the trades were conducted as a spot offering, the details of which are not reported to the tape. Also, as the sales were conducted in that fashion, they were done outside of the exchange in a negotiated transaction at a slightly lower price than the lowest reported price of the day. More than sixty days have passed from the date of The Demand and the Aegerion failed to recover the profits alleged herein or to institute a lawsuit to recover profits.

29. Aegerions' counsel informed Plaintiff that Edelman had produced two confirmation slips and a Regulation M trading report (which must be filed with FINRA – the

SRO – whenever a bulk trade is consummated and that they relied on those two documents in concluding that no section 16(b) violation had occurred.

30. Plaintiff requested the documents relied on by Aegerion's counsel and was informed that they refused to provide the Reg M Trading report.

31. Plaintiff iterated that as Edelman felt the need to provide Aegerion's counsel with both documents to assist in making its determination and Aegerion specifically relied on both documents in making its determination, the confirmations and the Reg M report plaintiff wanted to see both documents to substantiate the lack of a section 16(b) violation.

32. Both Aegerion's counsel and Edelman's counsel refused to provide the Reg M trading report stating that the confirmations should be sufficient.

33. Plaintiff alleges that Edelman's trades were not executed on the date it is reported to have happened but indeed weeks earlier such that Edelman purchased and sold Aegerion securities within a six month period and any profits derived from those trades are recoverable by the Company.

34. The Defendant's history of SEC violations raises issues of the accuracy of their filings. This is consistent with the Defendant's history of violations of SEC rules and a copy of

one which is attached as Exhibit A. This is a cease and desist order in SEC release No. 60843 dated 10/20/2009. File No. 3-13657 that was for a willful violation of rule 105 of Regulation M.

a. The very filing of the SEC Form 4 on September 9, 2013 which includes the alleged September 5, 2013 sale of the 750,000 shares also includes a Form 4 report for the first time of the transaction of an exercise of calls on 200,000 shares that occurred on June 16, 2013. This report was over 2½ months late. That Edgar filing has a cover page which shows the last transaction was June 16, 2013 not September 5, 2013.

b. The Defendant has a history of violations including numerous late Form 4 reports and fraudulent Form 4 reports as well as Schedule 13 G/A filings SEC Form 3 reports that were fraudulent.

c. Defendant executed a series of SEC Rule 16c-4 violations from which he generated several million dollars.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant Edelman in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

Dated this 21st day of August, 2015.

J. D. JORDAN
Pro Se
Box 23866
New Orleans, LA 70183
jdsgold@gmail.com
(504) 737-3854

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 60843 / October 20, 2009**

**INVESTMENT ADVISERS ACT OF 1940**
**Release No. 2939 / October 20, 2009**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-13657**

| | |
|---|---|
| **In the Matter of**<br><br>**PERCEPTIVE ADVISORS LLC,**<br><br>**Respondent.** | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934 AND SECTION 203(e) OF THE INVESTMENT ADVISERS ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") and Section 203(e) of the Investment Advisers Act of 1940 ("Advisers Act") against Perceptive Advisors LLC ("Perceptive" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section

21C of the Securities Exchange Act of 1934 and Section 203(e) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

III.

On the basis of this Order and the Respondent's Offer, the Commission finds that:

**Respondent**

1. Perceptive Advisors LLC is a Delaware limited liability corporation, based in New York, New York, and is the investment manager for the Perceptive Life Sciences Master Fund ("Perceptive Fund").

**Summary**

2. From January 2005 through December 2005, Perceptive violated Rule 105 of Regulation M with respect to five repeat securities offerings. In each case, Perceptive sold securities short within five business days before the pricing of the offering, and then covered the short position, in whole or in part, with shares purchased in the offering. As a result, Perceptive obtained unlawful profits of $245,902.34.

**Legal Framework**

3. Rule 105 of Regulation M, "Short Selling in Connection with a Public Offering," at the time of the conduct described in this Order, prohibited covering a short sale with securities obtained in a public offering if the short sale occurred within the shorter of the period five business days before pricing and ending with pricing, or the period beginning with the initial filing of the registration statement or notification on Form 1-A and ending with pricing. In pertinent part, Rule 105 provided:

> In connection with an offering of securities for cash pursuant to a registration statement... filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during the... period beginning five business days before the pricing of the offered securities and ending with such pricing.

17 C.F.R. § 242.105.

**Perceptive's Trades**

4. On January 24 and 25, 2005, Perceptive sold short a total of 107,342 shares of Telik Inc. in an account it managed for the Perceptive Fund, at prices ranging from $18.8376 to $19.2402. After the market closed on January 27, 2005, a repeat offering of Telik shares was priced at $18.75. The Perceptive Fund account received a total of 378,000 shares in the offering and used 107,342 of the shares to cover the restricted period short position. As a result of these transactions, Perceptive Fund realized a profit of $15,195.06.

5. On September 15, 2005, Perceptive sold short 107,100 shares of Geron Corp. in an account it managed for the Perceptive Fund, at a price of $10.4283. After the market closed on September 15, 2005, a repeat offering of Geron shares was priced at $9.00. The Perceptive Fund account received a total of 107,100 shares in the offering and used the shares to cover the restricted period short position. As a result of these transactions, Perceptive Fund realized a profit of $152,970.93.

6. On October 5, 2005, Perceptive sold short 12,300 shares of Cotherix Inc. in an account it managed for the Perceptive Fund, at $14.1937. On October 6, 2005 a repeat offering of Cotherix shares was priced at $13.00. The Perceptive Fund account received a total of 45,000 shares in the offering and used the shares to partially cover the restricted period short position. As a result of these transactions, Perceptive Fund realized a profit of $8,236.53.

7. On November 2, 2005, Perceptive sold short 18,000 shares of Hythiam Inc. in an account it managed for the Perceptive Fund, at $5.1496. After the market closed on November 2, 2005 a repeat offering of Hythiam shares was priced at $4.75. The Perceptive Fund account received a total of 22,500 shares in the offering and used the shares to partially cover the restricted period short position. As a result of these transactions, Perceptive Fund realized a profit of $1,798.20.

8. From November 30 through December 6, 2005, Perceptive sold short 202,500 shares of Dendreon Corp. in an account it managed for the Perceptive Fund, at prices between $5.1366 and $5.9059. After the market closed on December 6, 2005 a repeat offering of Dendreon shares was priced at $4.50. The Perceptive Fund account received a total of 135,000 shares in the offering and used the shares to partially cover the restricted period short position. As a result of these transactions, Perceptive Fund realized a profit of $67,701.62.

**Violations**

9. As a result of the conduct described above, Perceptive willfully[1] violated Rule 105 of Regulation M.

**Remedial Efforts**

10. In determining to accept the Offer, the Commission considered remedial acts undertaken by Perceptive and cooperation it afforded the Commission staff.

**IV.**

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, pursuant to Section 21C of the Exchange Act and Section 203(e) of the Advisers Act, it is hereby ORDERED that:

A. Perceptive shall cease and desist from committing or causing any violations and any future violations of Rule 105 of Regulation M.

B. Perceptive is censured.

C. IT IS FURTHER ORDERED THAT Perceptive shall, within thirty (30) days of the entry of this Order, pay disgorgement of $245,902.34 and prejudgment interest of $68,852.92, for a total of $314,755.26, to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600. Payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Perceptive as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Andrew M. Calamari, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 3 World Financial Center, Suite 400, New York, NY 10281.

---

[1] For purposes of jurisdiction and assessing the sanctions enumerated herein, a willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)). There is no requirement that the actor "'also be aware that he is violating one of the Rules or Acts.'" *Id.* (quoting *Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 803 (D.C. Cir. 1965)).

D. IT IS FURTHER ORDERED THAT Perceptive shall, within thirty (30) days of the entry of this Order, pay a civil money penalty in the amount of $125,000.00 to the United States Treasury. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717. Payment shall be: (A) made by United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Suite 400, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (D) submitted under cover letter that identifies Perceptive as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Andrew M. Calamari, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 3 World Financial Center, New York, NY 10281.

By the Commission.

Elizabeth M. Murphy
Secretary

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

RECEIVED SDNY PRO SE OFFICE 2015 SEP -2 A 11:21

J D JORDAN
*Plaintiff*
v.
Receptive Advisors LLC
*Defendant*

Civil Action No.

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Receptive Advisors LLC
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within _____ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: ____________

J D Jordan
*Signature of the attorney or unrepresented party*

J D JORDAN
*Printed name*

Box 23866 New Orleans 70183
*Address*

JDSgold@gmail.com
*E-mail address*

5047323854
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

RECEIVED
SDNY PRO SE OFFICE
2015 SEP -2 A 11:21

J D Jordan
*Plaintiff*
v.
Perceptive Advisors LLC
*Defendant*

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: Perceptive Advisors LLC
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from ______________, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: ______________

[signature]
*Signature of the attorney or unrepresented party*

*Printed name of party waiving service of summons*

J D Jordan
*Printed name*

Box 23846 New Orleans 70183
*Address*

JDSgold@gmail.com
*E-mail address*

5047373854
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

RECEIVED
SDNY PRO SE OFFICE
2015 SEP -2 A 11: 21

J D Jordan
*Plaintiff*
v.
Perceptive Advisors LLC
*Defendant*

Civil Action No.

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* Perceptive Advisors LLC
499 Park Avenue 25th Fl
New York, NY 10022

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*